# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| TRAVIS GODWIN, | ) |
| Plaintiff, | ) |
| vs. | ) Case No: 1:13-cv-01308-STA-egb |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## ORDER REVERSING THE DECISION OF THE COMMISSIONER AND REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)

Plaintiff Travis Godwin filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on June 4, 2012. On August 20, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **REVERSED**, and the action is **REMANDED** for additional testimony pursuant to sentence four of 42 U.S.C. § 405(g).

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[1] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7] "[W]hen there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration."[8]

The Court may immediately award Plaintiff benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."[9] "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking."[10] These factors are not present in this case, and, therefore, an immediate award of benefits is not appropriate. However, a remand pursuant to sentence four of § 405(g) is appropriate because all essential issues have not been resolved.

Plaintiff was born on May 28, 1967, and was forty-five years old at the time of the ALJ's decision.[11] He left school at the age of eighteen, after completing nine years of special education.[12] He has past relevant work as a forklift operator and as a material handler.[13] Plaintiff alleges disability due to back problems, a bullet in his pancreas, numb feet, hypertension, chronic pain syndrome, insomnia, hyperlipidemia, and mild mental retardation; his alleged onset date of disability is September 30, 2009.[14]

---

[8] *Faucher v. Secretary*, 17 F.3d 171, 175 (6th Cir. 1994).

[9] *Id.* at 176 (citations omitted).

[10] *Id.*

[11] (R. 164, ECF No. 7.)

[12] (*Id.* at 25, 40, 170.)

[13] (*Id.* at 25.) The actual scope of Plaintiff's job duties is discussed below.

[14] (*Id.* at 14, 169, 196.)

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through December 31, 2014; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, status-post gunshot wounds of the lower back and right thigh, obesity, and borderline intellectual functioning; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to lift and/or carry forty pounds occasionally and ten pounds frequently; stand and/or walk for at least two but less than six hours in an eight-hour workday; sit for six hours in an eight-hour workday; perform simple, routine, and repetitive tasks; occasionally work with coworkers; occasionally stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; never balance; never climb ladders, ropes, or scaffolds; never work around hazards; never work with the public; and never perform a job requiring reading, writing, and math skills; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a limited education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[15]

---

[15] (*Id.* at 16-26.)

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[16] The claimant bears the ultimate burden of establishing an entitlement to benefits.[17] The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[18]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[19]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[20] Here, the sequential analysis proceeded to the fifth step

---

[16] 42 U.S.C. § 423(d)(1).

[17] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[18] *Id.*

[19] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

with a finding that, although Plaintiff cannot perform his past relevant work, there is a substantial number of jobs that exist in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings and that the ALJ did not follow all the legal rules in making her decision. He specifically argues that the ALJ erred (1) by failing to find that his conditions meet or medically equal a listed impairment, (2) in her weighing of Plaintiff's credibility and the medical evidence of record, and (3) in finding that he could perform other work that exists in substantial numbers in the national economy. Plaintiff also contends that evidence submitted to the Appeals Council warrants remand for further administrative consideration.

The Court will consider Plaintiff's last argument first. Plaintiff seeks a remand under sentence six of 42 U.S.C. § 405(g) based on evidence he submitted to the Appeals Council that was not before the ALJ. Plaintiff submitted the treatment notes of Cortez Tucker, M.D., dated September 2012 to April 2013 and his April 2013 opinion concerning Plaintiff's limitations.[21] Plaintiff contends that this evidence shows that he was unable to work because of chronic pain.

A court may consider evidence submitted to the Appeals Council only to determine whether the evidence satisfies the criteria for remand under sentence six of 42 U.S.C. § 405(g).[22] Thus, evidence submitted after the ALJ's decision cannot be considered part of the record for purposes of a substantial evidence review. "To obtain a sentence-six remand, a claimant has the burden to establish that there is (1) new evidence; (2) which is material; and (3) that there is good

---

[20] 20 C.F.R. § 404.1520(a).

[21] (R. 421 - 509.)

[22] *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010).

cause for the failure to submit it to the ALJ."[23] The Sixth Circuit has explained that "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding."[24] Such evidence is deemed "material" if "there is a probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with new evidence."[25] The additional evidence must relate to the period on or before the date the ALJ rendered a decision.[26]

Here, Dr. Tucker's April 2013 opinion letter is dated after the ALJ's decision and does not address the issue of whether Plaintiff was disabled on or before August 20, 2012, the date of the decision. Moreover, Dr. Tucker did not identify any objective medical evidence to support his opinion that Plaintiff is unable to work, and Plaintiff has not pointed to any specific evidence in Dr. Tucker's treatment notes to support his allegations.[27] Consequently, Plaintiff's argument that this matter should be remanded for consideration of the evidence presented to the Appeals Council fails.

However, a remand is in order because the ALJ failed to correctly assess both the medical evidence in the record and Plaintiff's credibility. At step three of the evaluation process, an ALJ must analyze whether a claimant meets a listed impairment from 20 C.F.R. Pt. 404, Subpt P,

---

[23] *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013) (citation omitted).

[24] *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483-84 (6th Cir. 2006) (citation omitted).

[25] *Desantis v. Comm'r of Soc. Sec.*, 24 F. Supp. 3d 701, 709 (S.D. Ohio 2014) (quoting *Huffer v. Heckler*, 591 F. Supp. 626 (S.D. Ohio 1984).

[26] *See Wyatt v. Sec. of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (finding that evidence of a subsequent deterioration or change in condition after the administrative hearing is immaterial).

[27] Dr. Tucker's letter was addressed "To Whom It May Concern" and merely stated "This letter is being generated to inform you that Mr. Godwin is unable to work due to chronic pain syndrome and is in the process of acquiring his permanent disability." (R. 423.)

App'x 1. A claimant must meet all of the specified medical criteria of a listing in order to show that his impairment matches the listing.[28] "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment."[29]

Plaintiff specifically contends that his impairments meet or equal section 12.05 of the Listing of Impairments. At the time of the ALJ's decision, Listing 12.05 stated in relevant part:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.[30]

The introductory material to the mental disorders listings provides that:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.[31]

Because Plaintiff contends that his impairments meet or equal subsection C of Listing 12.05, he has to prove that his impairments satisfy the diagnostic description in the introductory

---

[28] *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[29] *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)).

[30] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2012).

[31] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (2012).

paragraph of Listing 12.05 and that he has a valid IQ score of seventy or below and another severe impairment.[32]

The ALJ relied on the following evidence in finding that Plaintiff failed to prove that his impairments meet or equal the diagnostic description in the introductory paragraph of Listing 12.05. Consultative psychologist Robert W. Kennon, Ph.D., examined Plaintiff and opined that he attempted to portray himself in a negative light, exhibited evidence of malingering, demonstrated inconsistency in his responses, and attempted to appear much more negatively impaired cognitively than was actually the case.[33] According to Dr. Kennon, when answering questions on the mental status exam, Plaintiff "either guessed wildly or purposely missed items."[34] Based on this evidence of purported malingering, Dr. Kennon found that Plaintiff had no disabling mental condition.[35]

Consultative psychologist Paul W. Brown, Ph.D., examined Plaintiff and also opined that he gave poor effort on test items and may have been malingering.[36] Dr. Brown estimated that Plaintiff was in the borderline to low average range of intellectual functioning, and he opined that Plaintiff could perform at least simple, routine work activities.[37] Because Dr. Brown diagnosed Plaintiff with borderline intellectual functioning, not mental retardation, the ALJ

---

[32] *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00(A), 12.05 (2012); *Peterson v. Comm'r of Soc. Sec.*, 2014 WL 223655 at *6 (6th Cir. Jan. 21, 2014).

[33] (R. 18, 285-87.)

[34] (*Id.* at 286.)

[35] (*Id.* at 287.) ("He is unable to provide any bona fide symptoms to support any DSM IV mental condition.")

[36] (*Id.* at 348-360.)

[37] (*Id.* at 357- 359.)

found that Plaintiff's impairments did not satisfy the diagnostic description in the introductory paragraph of Listing 12.05.

Plaintiff contends that the ALJ did not properly consider the opinion of consultative examining psychologist David Pickering, Ph.D., that his IQ scores supported a diagnostic impression of mild mental retardation. The ALJ viewed Dr. Pickering's diagnosis of mental retardation as being based solely on the scores Plaintiff received on the Shipley Institute of Living Scale and Revised Beta Examination – Second Edition (BETA-II), without a full evaluation of Plaintiff or consideration of how Plaintiff's work history reflected his functional ability. Despite Plaintiff's low test scores, the ALJ rejected Dr. Pickering's diagnosis of mild mental retardation based primarily on the opinions of Dr. Kennon and Dr. Brown that Plaintiff exhibited poor effort and was likely malingering. However, as noted by Plaintiff, he worked for twenty years for the same employer, and there is nothing in his personal or work history to suggest malingering.

Although the ALJ's rejection of Dr. Pickering's opinion based, in part, on the unsupported finding of malingering is concerning, of more concern is the ALJ's mischaracterization of Plaintiff's work history. For example, the ALJ noted with approval Dr. Brown's reliance on the fact that "the claimant drove a forklift for 20 years" in finding that Plaintiff was not mentally retarded but, instead, was in the borderline to low average range of intellectual functioning.[38] However, as discussed below, Plaintiff drove a forklift for five years – not twenty years.

Additionally, the ALJ relied on what she viewed as evidence that Plaintiff had worked for twenty years for the same company and "performed the same job as everyone else" during his

---

[38] (R. 18.)

10

twenty year work history both in rejecting Dr. Pickering's opinion and in finding that Plaintiff's borderline intellectual functioning did not meet Listing 12.05(C). Plaintiff contends that he did not testify that he performed the work that other employees performed during the latter part of his employment, and a review of the transcript shows that Plaintiff is correct about his testimony.

Plaintiff began working at "the cheese factory" in 1997, and his employment there ended sometime in 2009.[39] Plaintiff testified that he drove a forklift for the first four or five years of his employment.[40] After that, his job involved "a lot of lifting" until 2003 when he hurt his back.[41] Plaintiff further testified that, after his back injury, his supervisor wanted to fire him but the plant manager "kept [him] around because [he] had been there so long… and was a good employee."[42] In response, the ALJ clarified "[e]ven though you couldn't do the work," and Plaintiff responded, "Yes."[43] The ALJ then asked, "When you say you weren't doing what the other employees were, are you talking about the entire time you worked there?" and Plaintiff answered that he stopped doing what the other employees were doing after his back injury.[44]

Even though Plaintiff clearly testified that he drove a forklift for five years at most and did not perform the same duties as the other employees after 2003, the ALJ accepted Dr. Brown's reliance on the inaccurate statement that Plaintiff drove a forklift for twenty years and

---

[39] (*Id.* at 12, 163.)

[40] (*Id.* at 48.)

[41] (*Id.*)

[42] (*Id.* at 49.)

[43] (*Id.*)

[44] (*Id.* at 49-50.) Plaintiff testified that, after his back injury, he mopped and dusted at the plant. (*Id.* at 41-42.)

misinterpreted Plaintiff's testimony about his work history to mean that he "performed the same job as everyone else except when he was on light duty *for a while* following a back injury."[45] The ALJ's stated reasons for crediting Dr. Brown's report over Dr. Pickering's report and her credibility assessment of Plaintiff are based on a faulty reading of the evidence and cannot constitute substantial evidence to support a denial of benefits.[46] Accordingly, the decision denying Plaintiff's applications for benefits must be reversed.

Having determined that the decision must be reversed, the Court must decide whether it is appropriate to remand this case or to direct the payment of benefits. Because the record does not establish that Plaintiff is entitled to benefits or that all essential facts have been resolved, it is appropriate to remand this case for further proceedings. In summary, the decision of the Commissioner is **REVERSED**, and the action is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 29, 2016.

---

[45] (*Id.* at 22.) (emphasis added)

[46] *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 527 (6th Cir. 2014) ("Although the record contains some evidence supporting the ALJ's decision to accord Papadakis' opinion little weight, it is not clear that the ALJ would have come to the same conclusion had she not mischaracterized the record….")